IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SIDNEY L. COLEMAN,

                      Plaintiff,

   v.                                              OPINION and ORDER

BOBBIE BAILEY, BRIAN MIKULA,
TERRIE VAN WARD,                          18-cv-732-jdp
and NICOLE SARBACKER,[1]

                      Defendants.

---

       Plaintiff Sidney L. Coleman, appearing pro se, alleges that officials at the Dane County Jail denied him medication for mental health problems when he was housed there. Coleman brings claims under the Fourteenth Amendment to the United States Constitution. Defendants are split into two groups: (1) medical-professional defendants Bobbie Bailey, Terrie Van Ward, and Nicole Sarbacker; and (2) defendant Lieutenant Brian Mikula.

       Both sets of defendants have filed motions for summary judgment. Coleman did not respond to either motion. Under this court's summary judgment procedures, that means that I will consider defendants' proposed findings to be undisputed. *See* Dkt. 16-1, at 8 ("If a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed.").

       Defendants' undisputed facts show that each defendant acted reasonably in treating Coleman and in handling his grievance about his treatment, so I will grant defendants' motions for summary judgment and dismiss the case.

---

[1] I have amended the caption to include defendants' first and last names.

UNDISPUTED FACTS

Plaintiff Sidney L. Coleman is a former prisoner at the Dane County Jail. This case is about Coleman's stint at the jail from July 7 to October 31, 2018, while he was detained pending an alleged probation violation. Defendant Brian Mikula was a lieutenant at the jail. The jail contracted with a company called Correct Care Solutions to provide medical services to inmates. I infer that defendants Bobbie Bailey, Nicole Sarbacker, and Terrie Vann-Ward were employed by Correct Care Solutions. Bailey and Sarbacker are nurses. Vann-Ward is a nurse practitioner.

**A. Coleman's treatment**

Coleman was incarcerated on July 7, 2018 after turning himself in for a probation violation. Defendant Sarbacker performed a "Receiving Screening" evaluation, and she completed a form used to identify medical issues or medications Coleman was taking prior to his incarceration. Coleman said that he was taking olanzapine 10 mg, which is a medication commonly used to treat mental health and mood conditions.

Coleman presented a prescription bottle from Walgreens pharmacy dated September 13, 2017. Sarbacker asked Coleman about the pharmacies from which he obtained medication; Coleman identified only Walgreens. Sarbacker contacted that pharmacy to verify whether Coleman possessed current valid prescription for olanzapine. Walgreens personnel told her that the prescription was no longer valid. Sarbacker would not let Coleman keep the olanzapine because it was no longer a valid prescription.

Coleman underwent an initial "behavioral health" evaluation the next day, with non-defendant staff. Based on the examination and Coleman's responses, the mental health

2

staff noted that treatment was not indicated at that time. They explained how Coleman could contact staff about further treatment.

Coleman had another mental health exam a few days later, with a non-defendant staff member. Coleman asked for his olanzapine medication, but he was told that the doctor would not continue the prescription if the booking nurse could not confirm that the prescription was active. The staffer explained that if Coleman wanted medication, he would need to agree to a "sleep and symptom log" to be assessed for mental health conditions and possible medications, but Coleman refused. He had a couple of other meetings with non-defendant mental health staff in July.

On July 26, 2018, Coleman agreed to complete a symptom log. He noted trouble sleeping, past use of marijuana to help his sleeping, and current feelings of irritation, anger, and paranoia. Based on Coleman's log, a nurse performed another behavioral health assessment on August 3, 2018. The mental health nurse discussed Coleman's current symptoms, assisted Coleman in finishing the symptom log, and made a note to refer Coleman to psychiatry for further assessment.

Coleman submitted a mental health request form on August 7, 2018, requesting to be placed back on his olanzapine. Health services staff responded the next day, telling Coleman that he had been referred to psychiatry for an appointment and that he was on the list to be seen as soon as an appointment was available. Mental health staff met with Coleman weekly while he was waiting for his psychiatry appointment. At each appointment, Coleman reaffirmed his desire to speak to the psychiatrist at the jail but otherwise denied any mental health concerns.

Nurse Practitioner Vann-Ward saw Coleman on September 4, 2018, which was the first available psychiatric appointment. Coleman was agitated and threatening during the appointment, yelling at the top of his voice, with clenched fists. Vann-Ward and Coleman discussed Coleman's current symptoms and past medication use. Vann-Ward cut the appointment short and requested correctional officer intervention because of Coleman's threatening behavior. Vann-Ward believed that Coleman suffered from antisocial personality disorder and could benefit from olanzapine. Before being escorted out the room, Coleman consented to receiving olanzapine. Vann-Ward entered a prescription for olanzapine 10 mg and for Coleman to undergo appropriate labs. She scheduled a follow-up appointment in four weeks.[2]

Coleman began receiving olanzapine on September 4 and he received it throughout the rest of his stint at the jail.

**B. Grievance**

Coleman submitted a formal grievance around August 3, 2018 concerning staff's refusal to provide olanzapine.[3] Defendant Lieutenant Mikula was the supervisor responsible for receiving grievances in Coleman's building. Mikula sent the grievance to the health services administrator for review.

Defendant Nurse Bobbie Bailey responded to that grievance on August 6, notifying Coleman that the medical staff, through defendant Nurse Sarbacker, attempted but was unable

---

[2] Defendants provide additional proposed findings regarding Coleman's later mental-health treatment, but those events postdate the date of Coleman's complaint and are not part of this lawsuit, so I do not include those findings here.

[3] In his grievance, Coleman also mentioned a nasal spray for sinus problems. But Coleman's claims are limited to his mental health medication, so I will not discuss the nasal spray further.

4

to verify his olanzapine prescription with Walgreens, so they could not provide that unverified medication without him undergoing further assessment with the mental health staff. Bailey denied the grievance.

Coleman appealed the grievance about a week later. A supervisor—in this case, Mikula—is responsible for investigating the appeal and notifying the inmate of the appeal decision.

Mikula reviewed the initial grievance and spoke with the health services administrator, B. Wiersma. Wiersma confirmed that nursing staff attempted to verify the medication requested by Coleman and was unable to do so. She also told Mikula that Coleman was referred to psychiatry and that Coleman was on the list to be seen by a psychiatry professional. Mikula denied the appeal and sent Coleman a response explaining that Coleman's prescription was outdated and that he was on the list for a psychiatry appointment.

ANALYSIS

In screening Coleman's claims, I noted that it was unclear whether he was a pretrial detainee, whose rights are governed under the Fourteenth Amendment, or a convicted prisoner, whose rights are governed by the Eighth Amendment. Dkt. 6, at 2. I took Coleman to be saying that he was incarcerated under a probation revocation, so I screened his claims under the Eighth Amendment. *Id.* But the medical defendants say that Coleman's stint at the Dane County Jail was while he was awaiting a probation revocation decision, and that the Fourteenth Amendment should apply. Case law is unclear which amendment should apply in such a situation; for purposes of this opinion, I will assume that the more plaintiff-friendly Fourteenth Amendment standard should apply.

Unlike the Eighth Amendment, which prohibits cruel and unusual punishment for convicted prisoners, the Fourteenth Amendment prohibits any type of punishment against pretrial detainees. *See Youngberg v. Romeo*, 457 U.S. 307, 320 (1982); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). Under this standard, a detainee plaintiff need not prove the defendant's subjective state of mind; he need show only that the defendant's actions were "objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (discussing an excessive force claim); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (expanding *Kingsley's* rationale to medical care claims). This means that jail officials must respond reasonably to the medical needs of prisoners. Even under this more generous standard, the undisputed facts do not support constitutional claims against any of the defendants.

Coleman alleges that all of the defendants denied him mental health medications. The first interaction Coleman had with any of the defendants was at his initial evaluation upon his booking in July 2018, with defendant Nurse Sarbacker. Sarbacker indeed refused to give Coleman his bottle of olanzapine, but she denied him that medication because she learned through investigation that the prescription had expired. No reasonable jury could conclude that it was unreasonable to withhold medication that was no longer authorized by a prescription.

Coleman then received evaluations from non-defendants and he initially refused further testing that the jail used to assess a need for mental health medications. In late July, he worked with non-defendant staff to complete that testing. None of the defendants were personally

6

involved in this treatment, so none of them can be sued for a constitutional violation about this treatment. *See, e.g.*, *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Coleman was treated by Terrie Vann-Ward in early September 2018. She saw him at the first available opportunity, and there was nothing in Coleman's August treatment records that suggest that there any emergency-based reason to move him up the wait list. Vann-Ward then provided Coleman with the exact treatment he wanted: a prescription for olanzapine. No reasonable jury could conclude that Vann-Ward acted unreasonably.

In early August, Coleman filed a grievance about the deprivation of olanzapine that was reviewed by defendant Nurse Bailey, recounting that Sarbacker denied him the medication because the prescription was expired. Bailey also told him that if he wanted to be prescribed medication, he should use the jail's healthcare-request procedures. It was reasonable for Bailey to deny the grievance because Sarbacker's underlying denial of medication was reasonable. In addition, Bailey explained to Coleman how to receive further care. No reasonable jury could conclude that Bailey violated the Fourteenth Amendment.

Coleman also sues defendant Mikula, who is not a medical professional. Mikula forwarded the initial grievance to medical staff and then later investigated Coleman's appeal and denied it because medical staff told him that Coleman's prescription was outdated and that he was on the list to be seen by a psychiatrist. Mikula relied on medical professionals' opinions in denying the appeal and there is no indication that he mishandled the grievance or appeal in anyway. A grievance examiner's proper processing of grievances and reliance on professionals' opinions on medical issues is enough to defeat an Eighth Amendment claim, *see e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), and I conclude that that it I

enough to defeat a Fourteenth Amendment claim too; there is no evidence that Mikula acted unreasonably.

Because defendants' undisputed facts show that each defendant acted reasonably in treating Coleman's mental health and handling his grievances, I will grant their motions for summary judgment and dismiss the case.

## ORDER

IT IS ORDERED that:

1. Both sets of defendants' motions for summary judgment, Dkt. 44 and Dkt. 53, are GRANTED.

2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 9, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge